Mr. Maloney. May it please the Court. I assume the Court is familiar with the fact, since I intend to move directly into the issues. The District Court abused its discretion in Patent Attorney, Mr. Nelson, you do not notify the Patent Office of litigation involving the parent 992 patent. The relevant facts are undisputed. The declaratory judgment case filed by Union Ridge Commencement ec- currently having been outlatched. Er, let me just, cause there's just so many issues here, let me just say, as your main argument with respect to the litigation's conduct is that you have to show a but-for test, you have to show that there were validity concerns that would satisfy the but-for test in order to establish materiality. Is that your view? That is one of our two, of course, Your Honor, we believe that the litigation, because it did not involve any issues of invalidity or unenforceability or any prior art, does not satisfy the but-for materiality test, set forth in their sense. We also- Well, do you end there, or do you say, if it involved validity issues, would you be satisfied that it satisfies the but-for, or would you then take those validity issues and have to analyze whether or not there's a but-for relationship with respect to the validity questions? I believe that, um, the second would be the proper analysis, that under their sense, when the issue is withheld information, their sense says that the analysis has to determine whether or not that withheld information would have prevented at least one claim from issuing. So if there were invalidity issues that had been joined in the lawsuit, then I believe the proper analysis would have been to look at the substance of that information to determine whether it would meet the but-for materiality test. So the Patent Office has a requirement that you advise about litigation, ongoing litigation, and that's out the window now, except in the narrow circumstances where you can show that there are issues in the litigation that satisfy the but-for test? Other than that, one does not have to disclose ongoing litigation? Well, I think the Patent Office can promulgate its own rules and regulations to govern the conduct of attorneys who appear before it, but the issue here in the context of litigation is whether these patents should be declared unenforceable, and their sense makes clear that if the conduct complained of relates to withheld information, that withheld information must satisfy the but-for standard of materiality. So what about the commission, the small entity status, the alleged misrepresentation with respect to small entities? Well, again, with respect to materiality, we believe that an incorrect claim of small entity status would not meet the but-for materiality test because small entity status doesn't go – But false affidavits are per se material under Theracents. Under Theracents, a knowingly false affidavit would – could potentially satisfy the limited exception. Well, the knowingly goes to the intent, so let's just start with – let's just stick to materiality. Sure. Yes, there has to be intent to deceive. We all understand that. But if there's a false affidavit, it is per se material under Theracents, isn't it? If the false affidavit satisfies Theracents' test for egregious affirmative misconduct. And so I would contend that it's – there's more – you need more than a showing that the affidavit was false, but that it was knowingly false such that the submission of the affidavit – Well, what about the cases that they cite at Theracents for the proposition that a false affidavit is per se material? I mean, inherently material, per se material, that's the language that the Court uses. The Court was referring, I believe, to previous cases in which knowingly false affidavits were submitted, knowingly false data were submitted. Well, doesn't the knowingly go to the intent to deceive rather than to the materiality? Yeah, you're confusing intent and materiality. Well, the Court's – Union Rich was required to prove both intent and materiality by clear and convincing evidence. I guess what I'm saying is under the Theracents standard, it seems to me the same facts can relate to both aspects of the inquiry where the only basis for materiality is the affirmative egregious misconduct. Here, our facts are that nobody involved with the prosecution knew of the rooster agreement, that it could be interpreted the way the district court interpreted it to affect the license agreement. Well, didn't the district court make alternative findings? The Court found intent to deceive, correct? The Court found – inferred intent to deceive relating to the small entity claim, correct. Okay. And we believe that was erroneous. Because? Because, well, first of all, there was no evidence whatsoever that Mr. Nelson, the patent attorney, even knew of the existence of the agreement. There was no evidence that Mr. Nelson – I thought Mr. Nelson testified that the reason that he didn't disclose the agreement was because he thought it was an exclusive license. No, he did not so testify. He thought it wasn't an exclusive license. I'm sorry. That was not his testimony and that was not Tribal Caddy's argument. Tribal Caddy made the argument on materiality that referring to the district court's earlier ruling in the case that Rooster need not be joined as a party because it was not a divisible patent license, exclusive license, that it was no more than the type of license that allows a distributor to resell Tribal Caddy's product. But under the law, any license, even an unpaid license, would be sufficient to disqualify you from small entity status, right? Only a license that is a divisible license separate and apart from the right to resell the patent owner's product. And our position is that this particular distribution agreement only granted that implied license to resell the product and it granted a potential future license that never vested. It never vested because it required Rooster to first give notice that it wished to get manufacturing done by a third party and then give Tribal Caddy a right of first refusal to meet those terms. That never happened. Are you saying that that was, that when the district court interpreted that argument to be Mr. Nelson's conscious decision not to disclose it based on that argument, that that was wrong? That's correct, because Mr. Nelson never so testified. The testimony is that Mr. Nelson never even knew of the agreement or certainly didn't know when he became aware of it. The argument that... Is that testimony in his deposition because no one asked him about this during the hearing? Nobody asked him and that is a failure of Union Ridge to meet its burden of proof. All Union Ridge proved was that Rooster had more than 500 employees and this agreement existed. It didn't prove that anybody at Tribal Caddy knew of the significance of this agreement. What we have though are findings by the district court with regard to this that says that the lack of, the court finds a lack of credible good faith explanation for its misrepresentation. So the court has the right to make credibility findings, the court has the right to draw inferences, so why isn't that sufficient? I mean the court did make a finding that there was no credible explanation. In other words, he didn't credit, to the extent there were alternative explanations there, he didn't credit them. Don't we have to defer to that? Well, first of all, their sense confirmed the standard of intent originally set forth in Start Scientific, which makes clear that even the lack of a good faith explanation is not sufficient, because it's the challenger's burden to prove by clear and convincing evidence a knowing and deliberate withholding or misrepresentation and there was no evidence. The district court judge made a finding based on credibility. I mean even under Start Scientific, the most reasonable inference, etc. If the district court finds and discredits the other alternative reasonable inferences and says, I just don't believe it, don't we have to defer to that? Not if her finding was clearly erroneous and we contend that it was, because the district court simply missed the evidence, the lack of evidence. There was no evidence that anybody at Tribal Caddy understood this agreement could be relevant to a small entity claim. There was no evidence that anybody at Tribal Caddy knew that Rooster had more than 500 employees when their Mexican subsidiary was included and there was no evidence that their patent attorney, Mr. Nelson, knew of the agreement or Rooster's employee count. So at most, the record shows perhaps poor communication, perhaps an insufficient investigation by Mr. Nelson, but this court's prior case law makes clear that those circumstances are telling at most of simple negligence, not deliberate knowing conduct that would give rise to deceptive intent. But I'm correct then that during the evidentiary hearing, nobody ever asked Mr. Nelson about this, not you all, not the other side? You are correct. And he was sitting there on the stand testifying about a lot of things. Union Ridge had the right to call him on the stand and ask him about all this and they failed to do so. Tribal Caddy did not argue that Mr. Nelson knew of the agreement but interpreted it in the manner that your question suggested. They argued only on the issue of materiality that the agreement should not have been, should not have impacted their small entity claim because of the argument that it was not an actual present license agreement. But that was not the reason that the small entity claim was made. It was because, as I just explained, Tribal Caddy didn't even appreciate that the agreement could be relevant and their patent attorney, Mr. Nelson, there's no evidence that he even knew about it or that any specific person involved in the prosecution knew that Rooster had more than 500 employees. Let's say that there's a mistake about the number of employees or that, in fact, there should have been notification. Then the patent office levies or the person that made the mistake provides the missing fee. Is that right? There's there is a procedure available, your honor, for doing that. That's the procedure with what? With a disciplinary action of its own against, let's say, a deliberate mistake. I'm not sure if they charge interest but there is a makeup fee that is due that essentially requires a back calculation to be performed of that during the time period that the large entity status should have been claimed and a requirement that a certification be made that the error was made in good faith. I'm not sure how the patent office deals with enforcing that rule internally but they do have a regulatory group that can oversee attorney conduct and I would think that would be the better way of handling it than declaring that an innocent mistake like this, if it had been made, should result in the patent being declared unenforceable. But do you agree that the nature of the certification is essentially an affidavit? I do. It's a sworn statement. I do, your honor. Can I turn you to the obviousness question? Yes, of course. I think you argue several things. Let's forget about the admissibility of the evidence, the testimony by the lawyer or non-lawyer, whoever, and let's forget about the motivation to combine. Is your view that you're just missing Wang, that Wang was not prior art and therefore an obvious analysis by the district court is deficient because there's nothing to cover that particular aspect that Wang covered? Well, that's one of our concerns but not our primary concern. Wang is not very relevant as a reference to begin with. It's a standard rigid wood or metal toolbox and really is not relevant at all. Well, let me just ask you, when you take the other references that are good references, all you're missing is the triangular shape, correct? No, I disagree with that, your honor. Okay, what are you missing? First of all, missing any combination of the flexible and rigid panels as claimed, meaning a rigid bottom panel, rigid end panels, and flexible front and back panels. Okay, so they're all out there. They're out there but all the court did was selectively pick them from different places and say, well, this is all simple technology. It would be obvious to combine it together and we think that's legally erroneous. But even more importantly, our primary contention is a key aspect of all of the independent claims is the continuous closed loop binding. And that was construed as being a continuous loop with no start or ending point. Now, the claims are very specific as to the path that the binding has to traverse. There's one group of claims that requires the binding to traverse the side edges of the end panels and the bottom edges of the front and back flexible panels. The second group of claims requires that binding to traverse the side and bottom edges of the end panel and the top edges of the front and back panel. The ZIF patent simply does not teach that construct. What's the number of ZIF? I'm sorry, I know what you're talking about but I'm just trying to find it. The number of the patent, your honor? This is the 2960-136. The ZIF patent teaches the use of four separate bindings. There are two loop bindings. One extends around the periphery of the front side. One extends around the periphery of the back side. And then there are two linear bindings that extend along the top edge of the end panels. So it takes ZIF four separate bindings to bind his back together. A key point is that ZIF is found in the manner recited to provide for a durable construct, easy manufacturing, and an aesthetically pleasing finished product. That is nowhere taught or suggested in ZIF and it's nowhere taught or suggested in any other prior art reference. You don't think that with ZIF having these four separate portions of bindings that it would have been obvious to try to do one binding? No, and there is no evidence to, you know, to suggest that it would have been obvious to combine those teachings. If ZIF contemplated a different way of doing it and the benefits of doing it in the manner of the patent, it would have suggested that. But it doesn't. It's perfectly happy and content with the design that was disclosed in ZIF and none of the prior art that was relied on by the court even refers to the use of a continuous binding whatsoever. So there's no other teaching in the prior art or in any other Going back to Wang, how can you raise now the fact that it's not prior art if you never noticed below that the priority date was a problem? Well, that's a point well taken, Your Honor. The fact of the matter is it's not prior art, but as I indicated, it's not a very good reference to begin with. It's a rigid, old school toolbox that teaches nothing about constructing these The primary bone of contention with what the district court did is the manner in which she combined the panels of Hoover and Christman with the continuous binding, the beating shown in ZIF to arrive at the subject matter of the independent claims. Let's assume we reject that then. Let's assume we reject those arguments and all we're left with is Wang and the argument you make with respect to Wang that it was improperly considered. What is your argument there? Well, it's not prior art and it was an erroneous finding by the district court and so our position would be that it should be reversed. What did it add? I mean, assuming we accept what the district court concluded with respect to what the other references yield in combination, what more is required that Wang supplied that is now not here? Well, I believe she relied on Wang for the triangular shape of the end panels and again, you know, I think the patent itself, the travel caddy patents acknowledge that old style rigid toolboxes could have various shapes. Right, and there's no functional utility to the triangle, right? It's there for aesthetic purposes. Well, it has functional utility in the manner that it's claimed and some of the claims because the claims talk about rigid lower portions and triangular flexible upper portions and that allows the flaps to fold over and be secured by, for example, a drawstring. The end panels of Wang are solid rigid panels and so they don't teach that type of functionality. So for some claims, the reference is really far afield. Can I ask you about your argument regarding the jury trial and jury trial waiver? I mean, admittedly it was an odd circumstance in which the court just simply said, I'm going to do an evidentiary hearing where both parties had asked for a jury, but you participated in the process and never objected during the course of the process, did you? There was no separate objection made during the trial, but leading, I mean, the circumstances leading up to it, we believe are significant. Travel caddy asked only for a jury trial. When you say no separate objection, there was, other than the request for a jury trial in your initial hearings, there was never an objection lodged, was there? I'm not aware of a separate objection being verbalized on the record during the hearing. Travel caddy was required to participate in the hearing. If you were to have a jury trial on obviousness, what would go to the jury? I mean, there was very little secondary or objective indicia evidence, wasn't there? There was evidence from Ms. Curtin of the commercial success of Travel Caddy's patented bags, and there was evidence of copying by Union Rich, and there was evidence that the copied products then had a big impact on Union Rich's sales, so there was evidence of secondary considerations. And the trial judge never even mentioned copying when she was talking about the objective indicia? She didn't. It doesn't show up in her opinion. I didn't see it either, no. She seemed to discount the secondary considerations, but the hearing was also, in our view, unfair because of the inability of Travel Caddy to put on the type of evidence that is relevant to obvious through the technical expert, and I know you asked me not to focus on that, but there was some very relevant proofs that Travel Caddy intended to put on through a qualified technical expert that would go to... Who's the person skilled in the art in this field? What was the skill in the art? The district court determined that the level of skill in the art was an ordinary layperson of average intelligence, but she didn't go any further to define what level of knowledge such a person would have or how such a person would interpret the prior art, and that was one of the things that Mr. McPherson pointed out in his testimony. Let's move on. We'll save your rebuttal time, and let's hear from the other side. Thank you very much, Your Honor. Mr. McPherson. May it please the Court, Patrick McPherson with Wayne Morris. I represent the appellees in this case. Can we start where he ended just so that we can get something off the table? I mean, you're not arguing that the wording the court used to exclude that witness was appropriate, are you? Your Honor, I think the wording the court used was probably inarticulate, but... Okay. Meaning that the grounds was because he wasn't a lawyer? Correct. It's a little more than inarticulate. It's wrong, right? Well, yes, but if you look at what she looked at when she made that ruling, this was, the witness was in front of her, the counsel for the appellee right in front, and they talked about what his export report said and didn't have in it, and what his proffered testimony was going to be, and nothing in his export report addressed what they were proffering for. He didn't discuss the prior art in his export report. He didn't discuss the scope of the prior art or the differences between the prior art and the patents themselves, and this court had already had a full Markland hearing. She had a preliminary injunction. She was very well aware of this technology. But she didn't, that wasn't, you're asking us to now make a proper evidentiary ruling is what you're saying, but that's not the basis that this judge used. This judge was mistakenly under the impression that only a lawyer can talk about obviousness. And she said it twice. I think it's inarticulate what she was saying. What she said previously in the hearing is, I want to hear the lawyers argue about how this prior art makes it not obvious. She didn't need assistance in what the prior art was, and I think that's what she was trying to get to. I read the whole transcript. What she said is, I don't think anyone is allowed to talk about prior art and how it reads on the patents unless they're a lawyer. She said that like several times. I agree with you, but I don't think it affects the ultimate ruling in this case in that their expert did not provide any expert report as required as to what he was going to testify about, that he wasn't going to tell, he didn't have anything in his expert report about what the prior art was, what the scope was. She didn't need that, obviously, and I think if you look at the analysis she did, the court understood what the prior art is. The court understood the differences between the patent and the prior art. So you're not defending this clearly incorrect statement by the judge? You're saying it didn't matter? I'm saying it's a harmless error, and I understand the language she used is incorrect, and you can't exclude because he's not a lawyer, but I think it's harmless because she understood fully what he was supposed to be going to be teaching them. So you're saying she shouldn't have allowed him to testify, she had good sound basis for not allowing this witness irrespective. She had sound basis for not allowing this witness to testify. Her stated reason was incorrect. So how do we know the basis on which he wasn't allowed to testify? I think if you look at the analysis that she did, that she did the full analysis in this area, and this is one of those areas where this court is recognized, where KSR is recognized, when you have a combination of predictable elements, right, grounded in common sense, that you don't need to have expert testimony. And I think this court proved in her opinion that she understood this is easily understandable technology. It's dealing with carrying bags, and the three primary references she relied on are all directed to carrying bags. So you're telling us that we should assume that the burden of proof is met, of clear and convincing evidence, despite the fact that the defender's witness was disqualified in error? I think if you look at, it's the court's discretion whether she wants to hear that testimony or not. And I think it's harmless error where the court understands the prior art, applies the prior art correctly, that that witness can add nothing else to what the judge already knows. So if she excludes him on improper basis, but it's harmless because the court already understands what the prior art is and does the proper analysis, uses the proper law to get the analysis done, then whether she excluded him or not doesn't change the ultimate finding of the court. And I think that's what we have in this case. But the law says that this decision is made of obviousness from the viewpoint of a person of ordinary skill in the field of the invention. So we exclude the person of ordinary skill in the field of the invention, and we have the judge who has never said that the judge is skilled in this field. And so whose viewpoint now is to be weighed in the overall decision? Well, I think the judge did her analysis based upon the level of ordinary skill being a layman of average intelligence. So you're saying the judge is now the layman of ordinary skill in this field of invention? I think she probably considered herself one. She understood each and every element that was disclosed in the prior art, the differences between what the patent was claiming and what was in the prior art, and she felt comfortable doing that analysis. Now, she also had the benefit of the examiner at the PTO in a subsequent application, a continuation, where that examiner found each one of these elements that the judge was considering found in the prior art. And she did have that ability of the patent office examiner doing that analysis, which is also patent office examiners can be considered one of ordinary skill in the art. And so she did have the benefit of that when she did her analysis, and she cited to that. Not that it's binding on her, but that's just a consideration of what the prior art discloses. Can I ask you a process question? In your brief, your red brief 15, you say a remand isn't necessary for the inequitable conduct questions because the judgment may be upheld in view of the district court's invalidity for obviousness. Now, we've got an unenforceability finding and an obviousness finding. So don't we have to resolve the inequitable conduct even if we were to hypothetically affirm on obviousness? Or are you kind of waiving that and saying, well, if you affirm on obviousness, we'll forget about, just vacate the inequitable conduct finding? Well, I think the obviousness issue, and I probably can't speak for what my client would or wouldn't do if the obviousness is affirmed and the unenforceability is remanded. I don't know if I could speak to that right now. Well, you say in your brief, even if this court modifies the standard, a remand to the district court is unnecessary. That's on inequitable conduct because the judgment may be upheld in view of the independent basis of obviousness. Are you standing by that statement or retracting it? I will stand by that statement to the extent that if this court does affirm the obviousness, then it may not be necessary to remand for that. I think that's what it says. Right, but a remand doesn't resolve. I mean, but you've got an outstanding finding of inequitable conduct. You're not suggesting we affirm that. I mean, you're suggesting if we don't affirm that. In other words, if we vacate that, then we don't have to remand. Right. Because if we find obviousness. Right. And maybe it's skewed a little bit because of the supplemental briefing we had to do based upon what was going on with Therosense, and the red brief was before Therosense. So, I mean, that's what I'm aware of. Can I ask you about the issues of inequitable conduct? Why didn't you ask Mr. Nelson when you had him on the stand questions regarding intent? The issue was that was not an issue. The issue is that the patinee, whether through their agents or not, whether they had knowledge of this agreement, the testimony that was received from Mr. Nelson during his deposition, which was raised in one of the briefs, is that his normal practice was he would ask the client for these types of agreements. He does not remember not following that practice in this case. Did the judge accept that deposition as evidence in the record? I'm not sure about that. The issue of his knowledge never was raised. They never raised a defense. We didn't know about this agreement until the motion for reconsideration. But it's your burden to prove by clear and convincing evidence that he engaged in inequitable conduct, that the party engaged in inequitable conduct. And yet you had him on the stand, and whatever he said in his deposition doesn't do us much good if you never introduce that into evidence. I think it was assumed by all parties that that was not a defense. They didn't know about it. Their defense was it's a non-exclusive agreement. That's what the focus of the hearing was. It was never that it's non-exclusive, and we didn't know about it. So that was never the issue. Their sole defense was that it's a non-exclusive agreement. Well, that's a valid defense, right? If they believed it, whether they were right or wrong, if they believed that it wasn't, you know, if they misunderstood the law or misunderstood the facts, that's a defense on intent. I don't think it's a reasonable defense. If you look at the agreement itself— But it's not their burden. That's what I'm confused about. Do you understand who's burden? No, no. It's our burden to show, right? It's our burden to show intent. Specific intent to deceive, even before Theracent's. That's what King's down saying. Yes, ma'am. And the court can infer that intent. If they look at the legal basis, their explanation for why they didn't do it, if that's not rational, and she also finds their main witness, who should have been involved in this, someone made that determination, should have been involved in this. If he's not credible, and you have—they're taking a legal position, which is contrary to the explicit language of the agreement, and they're trying to make some distinction in the law that a non-exclusive agreement doesn't destroy small entity status, only an exclusive agreement. There's no basis for that in the law at all. But that's what their argument was to the court. And I think it was not just their failure to provide a good faith explanation for it, but they're taking an unreasonable position with respect to law, and their legal justification for doing that, the difference between a non-exclusive and exclusive licensee, there's no basis in the law for saying one is a small entity and one is not a small entity. In fact, it says a non-exclusive license destroys your ability to claim small entity status if that non-exclusive license is to a large entity. So, I mean, their legal basis for saying this is our justification didn't make any sense to the judge, and that's not a rational explanation. And so you're saying that that's enough to find specific intentions? Yes, ma'am. And combined with— Even after Theros says that's enough? I believe so. And combined with her finding of their witness was not credible with respect to his explanations for several of the actions that he took in this case. And I think when she gets down to it, she does use the proper standard in Therosense. That's the single most reasonable inference is intended to see when you have the facts such as this. That was the pre-Therosense standard of Star Scientific. What is the post-Therosense standard? I think it's the same, where the single inference has to be the most reasonable inference, is both pre- and post-Therosense. Clear and convincing evidence based on inference? Yes, ma'am. Okay, what about on obviousness? How do you respond to the argument that ZIF simply doesn't show that continuous finding and that the continuous finding was a claim or was an element of a number of the asserted claims? Well, the ZIF patent discloses exactly the continuous beating they're talking about. And if you look at Claim 2, Claim 2 talks about a continuous binding in ZIF. And it says, Claim 2 says, The carrying bag of Claim 1. Continuous U-shaped flexible beating extending around the edges of said front and rear walls respectively. Interconnecting the same with the adjacent edges of said end and bottom walls respectively. So I have a continuous binding that goes around the four sides of the bag. It ends up being continuous because it's four separate pieces that are put together, correct? In one embodiment, that's what it shows. But that claim can be read to say that's not four separate. It's a continuous U-shaped binding. That's what the claim says literally. And it's the same as the patent I have. If you look at the patent I have of what they've claimed, they've given the court drawings highlighted in color showing that continuous binding. But if you look in the drawing, there's also other bindings as well that are holding different edges of that. So while they're claiming a continuous binding, all their embodiments have other bindings as well in addition to that. Zipf has the same thing with respect to its drawings and its claim. So its claim is claiming a continuous binding going around all four sides and the bottom. And the drawing shows continuous bindings going around each side separately. So Zipf is a very good disclosure of what one of ordinary skill in the art would understand to be the use of binding. It's to hold the edges together. And the path you take to do that is probably maybe aesthetically pleasing or you can pick it for aesthetic reasons, but that's more for a design patent. When you're talking about patentability and the predictable use of a prior art element, I think Zipf shows that in spades. And if you also look at Zipf, Zipf also discloses a triangular-shaped endpoint, which is, you know, something I think is very useful to when you start talking about is a triangular-shaped endpoint, something that's in the prior art. Now, the court used Wang. The PTO used Wang. They never raised the issue that it was not prior art. But it clearly isn't prior art. I'm not sure that's the case. It's from a provisional application, and the provisional application is not the same as the utility application that was filed. So they have to make some showing that they're entitled to the filing date of a provisional application, that the disclosures are the same. Isn't that clearly established in the law as to the effect of the filing date of a provisional application? Only with respect to what is shown in the provisional application. Yes. That issue was never raised before the court because they never objected to the court calling that prior art. But you just raised it before us, did you not, as to whether it was or wasn't prior art? I think they're showing a need to make it. They're entitled to that date based upon what's in the provisional application against the utility application. That evidence was never before the court. They never raised that with the court. And you're not asking us to take your new evidence either, are you? I mean, you point to all these other prior art patents that you never showed to the district court. You're not asking us to all of a sudden accept evidence, are you? Or do our own prior art searches? No, ma'am. The ZIF patent is before the court. I know, but what about all the other patents that you cite? And you're free. Those were of record in the case. Those are the other patents that the examiner relied on, correct? Those are other patents that the examiner relied on. As evidence, that was in there. I'm talking, you can find it. So you didn't rely on those? We don't need to rely on those. You can look at the ZIF patent. It shows a triangle shape. But the court didn't point to the ZIF patent to find the triangle shape. The court pointed to Wang, right? The court pointed to Wang. But once again, when we have a piece of art that's before that discloses that, I think it's harmless error if they say, well, that doesn't disclose it, but the art before the court, the art that was there, does disclose that triangle shape. Those are findings that you're asking us to make? Your Honor, I'm not asking you to make the findings. I think that is evidence of record, that there is a triangle shape. I think it's based upon the language used in the patent, that this triangle shape just has to be, the top has to be thinner than the bottom. That is all evidence of record. That was all considered. These were patents considered by the court. The fact the court relied on the Wang patent, I think the court is entitled to rely on the Wang patent. And the fact that they didn't put on any evidence to show they're entitled to that filing date, didn't object to the court calling the prior art, didn't object to the patent office calling the prior art, that they're not entitled to that unless that evidential showing was made that they are entitled to it. All right. Are there any more questions for Mr. Maloney? We're over time. I'm sorry, Mr. McPherson. We're over time. Thank you, Mr. McPherson. Mr. Maloney. May it please the court, just briefly, the ZIF patent and the claim that Counselor referred to does not suggest or disclose the structure of the claims. It says continuous U-shaped flexible beading extending around the edges, so on and so forth. It doesn't say a beading, a single beading. The claim is consistent with the specification, which discloses multiple separate beadings. Just to clarify the record, I want to make clear that Travel Caddy never argued that it knew about and Nelson knew about the rooster agreement, but nevertheless interpreted it as being irrelevant because it was not an exclusive agreement. That was never Travel Caddy's argument. In the record at A60.1.6, their actual argument is set forth where Travel Caddy explains that this type of agreement at most creates an implied license to use and resell the products bought from Travel Caddy and then referred to the MPE section that clarified that such an implied license that runs with the product does not impact small entity status. And moreover, it was clearly Union Rich's burden to prove knowledge of the agreement, knowledge of the employee count, Mr. Nelson's knowledge and awareness of these issues, and there was an entire failure of proof on those issues. I know I don't have much time. I just want to speak very briefly to the claim construction issue of the word between. We're asking the court to revisit that issue because the district court improperly interpreted Figure 10 as supposedly not showing end panels and bottom panels that extend, bottom panels and front and back panels that extend external to the end panels. Union Rich's own technical expert read the figure the same way that we read the figure. It clearly shows that the bottom panels and the front and back panels extend beyond the end panels. So there was no basis to limit the word between, which has an ordinary meaning that allows for something to extend beyond the defined interval. Well, it's true we can revisit that question if we want to, given the preliminary nature of the early determinations. That was one that came up here, and we at least had a majority conclusion that at first blush that was a correct interpretation. You're asking us to second-guess an awful lot of other judicial officers, not just the district judge. I recognize that, Your Honor, and it's only because it was a very specific oversight made by the prior panel, and that was specifically the prior panel looked at Figure 10 and acknowledged that the district court said it's unclear. So it looked to Figure 4, and Figure 4 shows a cross-section of the binding. The prior panel misread Figure 4 and the accompanying text as describing the joinder of the bottom panel with an end panel, and it therefore concluded that Figure 4 is evidence that the bottom panel cannot extend beyond the end panel because the panels in Figure 4 are shown as being coterminous. However, Figure 4 actually describes the joinder of a bottom panel with the front panel, panel 28. It's very clear in the text of the patent that that's what Figure 4 describes. The specification then says that a similar binding technique can be used for other embodiments. Figure 10 is an entirely separate embodiment. It uses a similar binding technique, but the location of the binding is different. It's not joining coterminous panels. It is shown in the figure, as we've highlighted in our brief, being external to the end panel. The seam is shown as a solid line. But isn't that the exact argument, though? I mean, it's not that the prior panel overlooked it. It's that the prior panel rejected this argument. Isn't that more fair? I don't believe so. The prior panel raised this issue, Figure 4, sua sponte. It was not argued below, and it was not the basis for the district court's decision. The district court simply ignored the admission by their own expert that Figure 10 shows the panels extending beyond. Given Judge Dyke's dissent, though, it's kind of hard to say that the prior panel wasn't aware of these arguments. Well, the prior panel was, of course, aware of the district court's reasoning. Judge Dyke pointed out that in a comprising claim, the fact that additional structure extends beyond should certainly not exclude infringement. And we agree with that. But the specific error that we think was made by the majority of the prior panel was in misreading Figure 4 as describing the jointer of the end and bottom panels of Figure 10 when it clearly is not describing that juncture. So we believe there's no basis to artificially limit the word between, which, by the way, the prior panel and Judge Dyke recognized as an ordinary meaning that's broad enough to permit a structure to extend beyond the defined interval. So the question is... Okay. I think we really... The other side has another chance to respond to this issue and this argument. I think that we will take it under advisement. Thank you very much. Okay. Thank you, Mr. McPherson and Mr. Maloney. The case is taken under submission.